1  John W. Hanson, SBN: 214771
   Elisa M. Swanson, SBN: 215361
2  THE HANSON LAW FIRM
   7752 Fay Avenue, Ste. F
3  La Jolla, CA 92037
   Phone: (858) 451-0291 / Fax: (858) 451-0281
4  Email: john@thesandiegolemonlawyer.com

5  Alan M. Mansfield, SBN: 125998
   THE CONSUMER LAW GROUP
6  16870 W. Bernardo Dr., Ste. 400
   San Diego, CA 92127
7  Phone: (619) 308-5034 / Fax: (888) 341-5048
   Email: alan@clgca.com
8

9  Attorneys for Plaintiff

10

11              UNITED STATES DISTRICT COURT

12         FOR THE NORTHERN DISTRICT OF CALIFORNIA

13  WILLIAM JOHN JOHNSON, individually,        Case No.
    and on behalf of a class of similarly situated
14  persons,                                   CLASS ACTION

15  Plaintiff,                                 COMPLAINT

16                                             Violation of Consumers Legal Remedies Act;
    v.                                         Cal. Civ. Code §§1750 et seq.; Song-Beverly
17                                             Consumer Warranty Act, Cal. Civ. Code
    TOYOTA MOTOR SALES USA, INC., a            §§1790, et seq.;  Cal. Bus. & Prof. Code
18  California Corporation; TOYOTA MOTOR       §§17200, et seq.; Negligence; Breach of
    CORPORATION, a foreign corporation, and    Implied Warranty of Merchantability;
19  DOES 1-10 inclusive,                       Fraudulent Concealment; Common Counts
20
    Defendants.                                (Jury Trial Requested On All Causes of Action
21                                             so Triable)

22

23        Plaintiff, William John Johnson, on behalf of himself and all others similarly situated, all

24  to the best of his knowledge, information, and belief formed after an investigation reasonable

25  under the circumstances, which facts are likely to have evidentiary support after a reasonable

26  opportunity for further investigation and discovery, except for information identified herein as

27  being based on personal knowledge, hereby alleges as follows against the above named

28  companies, Toyota Motor Sales USA, Inc. ("Defendant" or "TMS"), Toyota Motor Corporation

                                            1

("Defendant" or "TMC") and DOES 1-10, collectively referred to throughout this Complaint as "TOYOTA."

## NATURE OF ACTION

1.      TOYOTA has violated the requirements of California's Business and Professions Code §§17200, *et seq*. (the "UCL"), California's Consumers Legal Remedies Act, California Civil Code §§1750, *et seq.* (the "CLRA"), and California's Song-Beverly Consumer Warranty Act, California Civil Code §§1790, *et seq*., among other laws, by failing to inform its customers that 2018 MY Toyota Tacomas (the "Tacomas" or the "Vehicles") were manufactured and distributed with defective bent rear axles, and that much of the replacement inventory for these same axles contains the same dangerous and substantial defect. This action is brought on behalf of a class and the general public seeking legal and equitable relief. Plaintiff, among other things, seeks restitution and/or damages for Class members, the identification of affected vehicles and parts, an injunction prohibiting further sales of the 2018 MY Toyota Tacomas produced with the defective axles, the removal of affected replacement parts from inventory, and a corrective campaign informing current 2018 MY Toyota Tacoma owners, dealers, and repair facilities as well as the general public of the defect in these Vehicles.

## JURISDICTION AND VENUE

2.      Jurisdiction and venue in this Court are based upon §1332 of Title 28 of the United States Code, 28 U.S.C. §§ 1332, as amended by The Class Action Fairness Act of 2005 ("CAFA"), Pub. Law 109-2 (Feb.18, 2005). The Class involves more than 100 persons. 28 U.S.C. §1332(d)(5)(A). The aggregate amount in controversy, exclusive of interest and costs, exceeds $5,000,000. 28 U.S.C. §1332(d)(2). Plaintiff is a resident of California, and Defendant TMC is incorporated under the laws of Japan and has its principal place of business in Japan. Therefore, minimal diversity of opposing parties is present as required under CAFA. 28 U.S.C.§1332(d)(2)(A).

3.      In connection with the acts and course of conduct alleged in this Complaint, the Defendants both directly and indirectly used the means and instrumentalities of interstate commerce to engage in the conduct at issue herein.

1     4.     Venue is proper in this District under §§ 1391(a)-(c) of Title 28 of the United
2  States Code, because a substantial part of the acts and conduct charged herein occurred in this
3  District and because Defendants do business in this District.  Venue is also proper in this Court
4  because many Class members did business with TMS and/or its dealer agents and engaged in
5  transactions in this District, TMS engaged in transactions in this District, maintains offices in this
6  District, and has received substantial profits from customers who engaged in transactions in this
7  District.  Mr.  Johnson purchased his vehicle in this District, and the vehicle was advertised,
8  warranted, and the repairs attempted in this District.  Numerous Class members likewise
9  purchased their Vehicles in this District, and sought repairs in this District. Plaintiff's
10  Declaration of Venue, as required under California Civil Code § 1780(d), which reflects that a
11  substantial part of the events or omissions giving rise to the claims alleged herein is situated in
12  the Northern District of California, is attached hereto as Exhibit A.

13                                              **PARTIES**

14     5.     On personal knowledge, at all relevant times mentioned, Plaintiff, William John
15  Johnson ("Plaintiff" or "Mr. Johnson"), a natural person, was and is a resident of Redwood City,
16  California.

17     6.     Toyota Motor Sales USA, Inc., is a California corporation that is licensed to
18  transact business in California and is engaged in the business of advertising, selling, distributing,
19  warranting, and repairing motor vehicles statewide in California, including in this District.  TMS
20  is the national distributor, warrantor and seller of the Toyota Tacoma, selling tens of thousands
21  of such vehicles to consumers, including Plaintiff.

22     7.     Defendant Toyota Motor Corporation ("TMC") is a foreign corporation organized
23  and existing under the laws of Japan. TMS is a wholly owned subsidiary of Toyota Motor North
24  America, Inc., a California corporation which operates as a holding company of sales and
25  manufacturing subsidiaries of TMC, and which is a wholly owned subsidiary of Defendant
26  TMC.  At all times relevant herein, TMC designed and manufactured motor vehicles, parts, and
27  other Tacomas for export and sale throughout the world, including the 2018 Toyota Tacomas at
28  issue sold throughout the United States and in this District.

CLASS ACTION COMPLAINT, *Johnson v. Toyota Motor Sales USA, Inc.*

8.     TMS is the alter ego of its owner or owners, and that there is insufficient separation of identity between the owner and the corporate entity, such that injustice would result to Plaintiff and the proposed class in this matter if the corporate veil were to remain intact.

9.     At all times mentioned herein, each defendant, whether actually or fictitiously named as DOES 1-10 in this Complaint, was the principal, agent or employee of each other defendant, and in acting as such principal, or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each defendant is liable to Plaintiff and the proposed class for the relief prayed for herein. At all times relevant herein, each defendant ratified the unlawful conduct of the other defendants, their agents and employees, by failing to repudiate the misconduct and by accepting the benefits of the transaction with knowledge of the wrongdoing.

## FACTS

10.    On personal knowledge, or about January 24, 2018, Plaintiff, Mr. William J. Johnson, paid $38,762.19 for the purchase of a 2018 Toyota Tacoma, VIN: 5TFRZ5CN9JX055315 (the "Vehicle") for personal, household or family use from a Toyota authorized franchise dealership in San Francisco, California.

11.    TMS distributed, advertised, and warranted the Vehicle. The 2018 Toyota Tacomas were offered for sale in advertisements created by Toyota as safe and rugged, capable for hauling and towing, and safe highway driving, among other representations (see, e.g., www.toyota,com/tacoma).  As a result, in 2016, almost 200,000 Tacomas were sold in the United States and Canada.  Beginning during this time Toyota's San Antonio, Texas plant began running Saturday shifts to keep up with demand, running at 125% of projected plant capacity. Since August 2017, which is about the time the Model Year 2018 Tacomas would have been made available for sale to the public, Toyota has sold over 100,000 Vehicles in the United States. For 2018, TMS USA announced it would increase production at its Tijuana, Mexico plant from 100,000 to 160,000 Toyota Tacomas based on high demand, announcing in February 2018 that Tacoma sales were up 18% from the prior year, with Toyota selling 16,817 Vehicles in that month alone. It is likely because of this excess demand, and the need to work overtime and run in

1   excess of plant capacity that these facilities reduced quality controls in such a manner as to
2   permit the distribution and sale of Toyota Tacomas with bent axles – a clear safety defect.

3      12. Concurrent with the purchase of his Vehicle, Plaintiff received an express written
4   warranty from TMS, which undertook to preserve or maintain the utility or performance of the
5   Vehicle or provide compensation if there is a failure in utility or performance during the
6   warranty period. In addition, to the extent the Tacomas were purchased by consumers from
7   authorized retailers and agents of TMS, the retail sellers of these goods were not intended by
8   Defendants to be the ultimate consumers of these Tacomas and were merely a pass-through
9   entity and have no direct rights under these agreements. Plaintiff and Class members were the
10  intended, ultimate consumers of the Tacomas, as such statements and warranties would be of no
11  benefit or relevance to the retailers. As such, any agreements for the sale of the Tacomas, to the
12  extent found to be not directly entered into between Defendants and Plaintiff and Class members,
13  were designed for and intended to expressly benefit the ultimate consumers only as the
14  beneficiaries of this transaction. Thus, as any agreements regarding the purchase and sale of the
15  Tacomas were intended to benefit the ultimate consumers and not the retailers, Plaintiff and
16  Class members are the intended rather than incidental third-party beneficiaries of such
17  agreements as the ultimate consumers and users of these Tacomas.

18     13. On personal knowledge, shortly after purchase, Plaintiff requested TMS's
19  authorized repair facility in Redwood City to attempt to repair rear-end noiese and  braking
20  issues he was experiencing in the Vehicle.

21     14. On the first repair attempt, the repair facility informed Plaintiff that the brake
22  drums were warped, and then replaced the brake drums, only to have the same braking issues
23  return soon after the Plaintiff picked up the Vehicle.

24     15. On the second repair attempt, the repair facility initially said the new brake drums
25  were also warped, and retained the Vehicle.

26     16. After several days, Plaintiff inquired about the status of the Vehicle repairs and
27  was told that TOYOTA was aware of a problem in the 2018 Tacomas.  Plaintiff was informed
28  that TOYOTA was sending out a representative to consult with the repair facility.  Plaintiff was

then informed that there was a run of Tacomas that were made **and sold** with bent axles, and that TOYOTA was aware of this issue. Plaintiff was also informed that the bent rear axle was warping the brake drums and that a new axle would be required.

17.    After the TMS authorized repair facility ordered a replacement part, Plaintiff was informed the part arrived with the same or similar defect, and a second part had to be ordered.

18.    When that part arrived, Plaintiff was informed it did not fit and was too large for the Vehicle, and a third axle was eventually ordered and installed.  Plaintiff's demand that Toyota buy back the Vehicle has been ignored to date, even though Plaintiff cannot be guaranteed the installation of a bent axle has not created other issues in his Vehicle as demonstrated by the impact of the bent axle on the Vehicle's braking system.

19.    Based on the recent recognition by a representative of a Toyota authorized repair facility and TMS field service personnel that there were numerous Tacomas sold with bent axles, and that replacement axles were also bent, TMS and TMC either knew or should have known of the defect prior to the sale and service of Plaintiff's Vehicle, and prior to the sale and service of the other Class members' vehicles.

20.    TOYOTA either knew or should have known that its replacement parts contained the same defect. A defective axle is a clear safety hazard, both in terms of its impact on the Vehicle directly and its adverse impact on the Vehicle's braking system, which Toyota had an affirmative obligation to disclose but has not done so.

21.    Plaintiff has suffered injury in fact and damage to his property or money as he would not have purchased the Vehicle at the price he did, if at all, had the true facts been disclosed by Defendants prior to sale, which they were not, and has lost the use of his Vehicle for an extended period of time due to this defective condition at sale and the defective run of parts now being used as replacement inventory, among other injuries sustained.  Plaintiff is concerned about the safety of driving this vehicle, not only because of the obvious problems of having a bent axle but also because how the bent axle  impacted the braking system of his Vehicle, and any residual damage to the braking system or other parts, among other reasons.

CLASS ACTION COMPLAINT, *Johnson v. Toyota Motor Sales USA, Inc.*

22.     Defendants refuse to take full responsibility for their actions, despite being aware that such conduct has taken place.

23.     As of this date Toyota is still selling these Vehicles, has not issued a corrective notice of this defect and has not offered a buy-back of these Vehicles to all affected persons.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action on behalf of himself and on behalf of a class of similarly-situated consumers, pursuant to Rule 23 of the Federal Rules of Civil Procedure, to challenge and remedy TOYOTA's wrongful business practices.  Plaintiff seeks relief for the following class of persons (the "Class"):

> All persons that purchased or leased MY 2018 Toyota Tacomas and whose vehicles were sold, leased, repaired, or otherwise supplied with bent rear axles (the "Defect"). The Class excludes the Court and its staff, and all employees of TOYOTA and its affiliates.

25.   In the alternative, Plaintiff seeks relief for the following California Class or Sub-Class (the "California Class"):

> All persons that purchased or leased MY 2018 Toyota Tacomas in California and whose vehicles were sold, leased, repaired, or otherwise supplied with bent rear axles (the "Defect"). The California Class excludes the Court and its staff, and all employees of TOYOTA and its affiliates.

26.     The proposed Class and/or California Class is so numerous that the individual joinder of all its members in one action is impracticable.  While the exact number and the identities of class members are not known at this time, as over 100,000 Toyota Tacomas were sold since August 2017, and Toyota was ramping up plant production to sell over 200,000 similar vehicles in 2018, the exact amount of impacted Vehicles can be ascertained through appropriate investigation and discovery through the records of TMS and/or TMC.  It is likely there are thousands of impacted Vehicles if, as the Toyota representative stated to Plaintiff, there was a "run" of Tacomas sold with bent axles, and the replacement axles were similarly bent and wrongly sized.

27.     Questions of law and fact of common and general interest to the Class and/or California Class exist and predominate over any questions affecting only individual members of the class.

28.     The common questions include, among others, the following:

(a)     whether MY 2018 Toyota Tacomas were produced with defective axles and/or used defective axles to repair such vehicles;

(b)     whether the defect is substantial and impacts the use, value or safety of such vehicles;

(c)     when TMS and/or TMC knew or should have known of the defect;

(d)     whether TMS and/or TMC breached the express warranty or implied warranty of merchantability in the sale or lease of the class members' vehicles;

(e)     whether TMS's and/or TMC's misrepresentations or omissions of material fact they were obligated to disclose were material to consumers;

(f)     whether TMS and/or TMC's actions were unlawful, unfair, or fraudulent under the UCL and in violation of the other state and federal laws referenced herein;

(g)     the amount of revenues and profits TMS and TMC received or saved and/or the amount of monies or other obligations imposed on or lost by class members as a result of such wrongdoing;

(h)     whether Plaintiff, the class members and/or the general public are threatened with irreparable harm and/or are entitled to injunctive and other equitable relief, and, if so, what is the nature of such relief;

(i)     whether Plaintiff and the class members are entitled to statutory, actual or exemplary damages, rescission, and/or equitable monetary relief from TMS and TMC and, if so, what is the nature and appropriate measure of such relief.

29.     Plaintiff's claims are typical of the claims of the class because Plaintiff and all class members were injured by the same wrongful conduct and scheme of the Defendants alleged herein.

30.     Plaintiff will fairly and adequately represent the interests of the class.  Plaintiff's interests are not antagonistic to the interests of the proposed class.  Plaintiff is represented by attorneys who are competent and experienced in consumer class action litigation.

31.     A class action is superior to other available group wide methods for the fair and efficient adjudication of this controversy because the harm suffered by each individual member may be relatively small compared to the expense and burden of prosecuting such an individual case, and of discovering and remedying the hidden wrongdoing of Defendants.

32.     If individual class members were required to bring separate actions, courts would be confronted by a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case by case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

33.     Defendants have acted on grounds generally applicable to the entire class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole.

34.     Notice of the pendency of and any resolution of this action can be provided to the class members by individual mailed notice or the best notice practicable under the circumstances.

## COUNT I

### VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT

### (CAL.CIV.CODE §§1750, et seq., ("CLRA") – for injunctive relief only)

35.     Plaintiff incorporates by reference all of the foregoing paragraphs as if set forth in full herein.

36.     By misrepresenting and failing to disclose the material fact of the existence of the defect in the axles in these Vehicles, both in terms of the axles initially installed and used in these Vehicles as well as in replacement components where Toyota's authorized repair facilities attempted to repair this defect, and that the warranty repairs did not conform to its

representations based on the limitations set forth above, TOYOTA violated Cal. Civ. Code §§1770(a)(5),(6),(7),(9), (15) and (16).

37.     TOYOTA's actions, representations, omissions, and other conduct are subject to the CLRA, because they extend to transactions that have resulted or were intended to result in the sale or lease of goods, and/or the repair of goods or other services provided to consumers.

38.     Plaintiff and the class members are "consumers" as that term is defined by the CLRA in Cal.Civ.Code§1761(d).

39.     The Vehicles that Plaintiff and class members purchased or leased are "goods," and the provision of repairs is a "service" within the meaning of Cal.Civ.Code §1761(a).

40.     Defendants TMS and TMC are "persons" under Cal.Civ.Code §1761(d).

41.     TOYOTA produced, manufactured, advertised, distributed, sold, and serviced the Toyota Tacomas.  TOYOTA either knew or should have known of the defect in the axles described above, failed to notify its customers, repair facilities, and franchise dealers about the existence of the defect, and failed to honor its warranties.  The defect is a safety hazard that Toyota had an affirmative obligation to disclose but has not done so to all affected persons to date.

42.     TOYOTA has continued to conceal the material fact that the Vehicles and replacement parts contain the defect and continues to fail to make full disclosure of the nature and extent of the defect.  If Plaintiff and the Class members had been informed of the defect they would not have purchased or leased the Vehicles at the prices they did, if at all, or paid for or undergone unneeded and ineffective repairs.

43.     TOYOTA concealed and suppressed material facts concerning the quality of the Vehicles and replacement-part rear axles to boost confidence in its Vehicles and service and falsely assure prospective purchasers and owners/lessors that the Vehicles are safe, reliable, and free of serious defects that impact the use, value or safety of these Vehicles.

44.     TOYOTA had a duty to disclose the defect in the rear axles of the 2018 Toyota Tacoma because the facts were known and/or accessible only to TOYOTA who had superior knowledge and access to the facts, went directly to issues related to the safety of such Vehicles,

and TOYOTA knew or should have known the facts were not known to or reasonably discoverable by Plaintiff and other customers, or the general public.  These omitted facts were material because they directly impact the value of these vehicles, their ability to be safely driven and used as intended, and whether they may be effectively and reasonably repaired.  Whether a manufacturer's vehicles and services are safe and reliable, whether a manufacturer abides by applicable laws and regulations, and whether a manufacturer is capable of honoring its warranties are presumptively material facts to a consumer.

45.     TOYOTA also actively concealed and/or suppressed these material facts, in whole or in part, to protect its sales and profits, avoid expensive remedial campaigns, avoid warranty repurchases required under California and other laws, and avoid anything that would hurt TOYOTA's image and cost it money, and it did so at the expense of Plaintiff and the Class members.

46.     TOYOTA has not made full and adequate disclosure and continues to conceal material information regarding defects that exist with these vehicles and the parts needed for an effective repair.

47.     It was foreseeable to TOYOTA that Plaintiff and the class members would act positively upon upon TOYOTA'S marketing claims of quality and safety when purchasing these Vehicles, and upon the omitted facts set forth above that would have been presumptively material to them. Plaintiff and the class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts relating to the defective rear axles as set forth above.

48.     Because of the concealment and/or suppression of these material facts, Plaintiff and class members suffered damage because they own or lease Vehicles that contain serious defects in these Vehicles' rear axles that raise serious safety and quality issues engendered by TOYOTA's corporate policies. Plaintiff and the class members did not receive the benefit of their bargain. Class members have also suffered damage by, inter alia, the loss of use of their Vehicles while making financing payments and DMV registration payments covering those same

periods, procuring alternative transportation costs and/or payment for unnecessary repairs to the bent rear axles and/or the braking systems of these Vehicles.

49.     Plaintiff does not seek damages under this Cause of Action at this time.  Plaintiff has provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code §1782(a). The CLRA provides that a Complaint for violation of the CLRA may be amended to add claims for actual, consequential, statutory and/or exemplary damages, without leave of court, should the violations not be remedied within thirty (30) days of written notification.  Plaintiff will seek to amend this Complaint to add a claim for such damages under the CLRA for violation of Civil Code §§1770(a)(5),(6),(7),(9), (15) and (16) should the statutory thirty day period expire without cure of Defendant's violations.

50.     Because of the acts of unfair competition or unfair or deceptive acts or practices detailed above, TOYOTA should be enjoined from continuing to employ the unlawful methods, acts and practices alleged to prevent any future harm to Plaintiff, the class members, and/or the general public pursuant to Cal.Civ.Code§1780(a)(2).

51.     Under Civil Code § 1780(d), Plaintiff may also recover attorney's fees and costs according to proof.

<u>**COUNT II**</u>

**VIOLATION OF THE SONG BEVERLY CONSUMER WARRANTY ACT-**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**(CAL.CIV.CODE, §§1791.1, 1792, 1794)**

52.     Plaintiff incorporates by reference paragraphs 1-34 as if set forth in full herein.

53.     Pursuant to California Civil Code section 1792, the sale of the Plaintiff's and Class members' vehicles were accompanied by TOYOTA'S implied warranty of merchantability.  Pursuant to Civil Code section 1791.1, the duration of the implied warranty is coextensive in duration with the warranty period of the express written warranty provided by Defendant TOYOTA, except that the duration is not to exceed one year.

54.     Pursuant to Civil Code section 1791.1(a), the implied warranty of merchantability means and includes that the Toyota Tacoma will comply with each of the following

1  requirements: (1) the Toyota Tacoma will pass without objection in the trade under the contract
2  description; (2) the Toyota Tacoma is fit for the ordinary purposes for which such goods are
3  used; (3) the product is adequately contained, packaged, and labeled; (4) the Toyota Tacoma will
4  conform to the promises or affirmations of fact made on the container or label.

5      55.    At the time of sale or lease, Plaintiff and the class members' Vehicles contained
6  the defect specified above, and/or the defective part was placed in the Vehicles later by
7  TOYOTA or its agents. The existence of the defect constitutes a breach of the implied warranty
8  because the Vehicle (1) does not pass without objection in the trade under the contract
9  description, (2) is not fit for the ordinary purposes for which such goods are used and goes to a
10  core functionality of the Vehicles in terms of being operated safely, (3) is not adequately
11  contained, packaged, and labeled, and (4) does not conform to the promises or affirmations of
12  fact made on the container or label.

13      56.    Plaintiff and the Class members have been damaged by TOYOTA's breach of the
14  implied warranties, and therefore bring this Cause of Action pursuant to Civil Code section 1794.
15  The defect at issue is in materials and workmanship, and is covered by TMS's express warranty.
16  Plaintiff, and/or TMS's authorized repair facilities, notified TMS of the need for repair several
17  times.

18      57.    Plaintiff and the class members seek damages and other legal and equitable relief
19  pursuant to Civil Code sections 1794(a)-(b)(2).

20      58.    Pursuant to Civil Code section 1794(d), Plaintiff and the class members also seek
21  to recover attorney's fees and costs.

22  ### COUNT III

23  ### VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200, et seq.

24  ### UNLAWFUL, UNFAIR, OR FRAUDULENT COMPETITION("UCL")

25      59.    Plaintiff incorporates by reference all of the foregoing paragraphs as if set forth in
26  full herein.

27      60.    Defendants TMS and TMC engaged in unfair competition, as that term is defined
28  in Business & Professions Code §17200, *et seq*. (the "UCL").

61.     As used in this Complaint and in the UCL, "unfair competition" means (1) an unlawful, unfair or fraudulent business act or practice; (2) unfair, deceptive, untrue or misleading advertising; and/or (3) an act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.  This conduct is actionable pursuant to Business & Professions Code §§17200 and 17203.

62.     In engaging in conduct that constitutes unfair competition, each Defendant has acquired money or property from Plaintiff and Class members. As a direct and proximate result of TOYOTA's unlawful, unfair and fraudulent business practices as alleged herein, Plaintiff suffered injury in fact and lost money or property, in that he purchased a Vehicle he otherwise would not have, paid more than he otherwise would, and lost use of the Vehicle because of the defect and improper and delayed repairs. Meanwhile, TOYOTA has sold more Vehicles than it otherwise could have and charged inflated prices for these vehicles, unjustly enriching itself thereby.

63.     TOYOTA's policies and practices regarding the sale of defective 2018 Toyota Tacoma Vehicles containing the defect described above, without providing compensation therefore, failing to notify its customers about the defect, failing to abide by its duty to disclose such material facts, failing to repurchase Vehicles, and failing to honor the applicable warranty, causes substantial injury to consumers with no countervailing legitimate benefit and is immoral, unethical, oppressive, unscrupulous, unconscionable or substantially injurious to Plaintiff and class members, and constitutes "unfair" business acts or practices within the meaning of the UCL.

64.     TOYOTA's policies and practices to not notify its customers about the existence of the Defect and failure to honor the terms of the warranty as required by law, and making material statements and/or material omissions likely to mislead Plaintiff and the public, constitutes "fraudulent" business acts or practices within the meaning of the UCL.

65.     TOYOTA's practices and policies as detailed are also "unlawful" business practices in the following respects in terms violating, inter alia, Cal.Civ.Code§1750, et seq., Cal.Civ.Code§1792,*et seq.*;     The Transportation Recall Enhancement, Accountability and

Documentation Act ("TREAD Act"), 49 U.S.C. § 30118(c), *et seq.*; breach of implied warranty, and Cal.Civ.Code§1795.90, and Cal. Pen. Code Section 382 as TOYOTA did not properly or reasonably disclose to customers that 2018 Toyota Tacomas are defective, failed to provide compensation therefore, and failed to timely notify its customers about the existence of the defect, failed to inform them of the ineffectiveness or even dangerousness of proposed repairs, failed to inform them of the unavailability of alternative repairs or of new and different parts, failed to offer repurchase or replacement, failed to inform them of potential safety concerns and consequences of the defect, failed to timely inform the applicable regulatory agencies and failed to honor the terms of the applicable warranties as required by law.

66.     Pursuant to Business & Professions Code §§ 17203 and 17204, the Court may enjoin such conduct in the future on behalf of the general public, order the provision of corrective notice, and compel Defendants to restore to Plaintiff and class members any money or property that Defendants may have acquired as a result of any act which constitutes unfair competition. The Court may also order Defendants to disgorge any profits which the Defendants may have obtained as a result of this conduct. Plaintiff seeks such relief, as well as fees and costs pursuant to, *inter alia*, Cal. Code Civ. Proc. Section 1021.5.

## COUNT IV

### NEGLIGENCE

67.     Plaintiff incorporates by reference all of the foregoing paragraphs as if set forth in full herein.

68.     At all times material hereto, TOYOTA designed, manufactured, advertised and distributed the 2018 Toyota Tacoma and its rear axle.

69.     TOYOTA had a duty to Plaintiff and the class to exercise reasonable and ordinary care in the testing, design, manufacture, inspection, distribution, marketing, and sale of the 2018 Toyota Tacoma and its rear axle.

70.     TOYOTA had a duty to Plaintiff and class Members to ensure that the 2018 Toyota Tacoma and its rear axles complied with all applicable safety codes and industry standards.

71.    TOYOTA breached its duty by producing and selling a defective product to Plaintiff and the class members containing the defective axle.

72.    TOYOTA failed to exercise ordinary and reasonable care in the testing, inspection, distribution, and manufacture of the 2018 Toyota Tacoma and its rear axle.

73.    As described herein, TOYOTA'S defective 2018 Toyota Tacoma and rear axles were bent or damaged and have failed in numerous ways, both directly and causing damage to other components.

74.    TOYOTA further breached its duty by failing to notify Plaintiff and the class members of the defects in the 2018 Toyota Tacoma and its rear axle that they were purchasing and installing as replacements, and by failing to take any remedial action once TOYOTA was on notice that its product was defective. It either knew or should have known that 2018 Toyota Tacoma and its rear axles were defective, unsafe, would fail prematurely, would cause damage to other parts such as the braking system separate and apart from the rear axles, were not suitable for use, and otherwise were not as warranted and represented by TOYOTA.

75.    It was also foreseeable to TOYOTA that Plaintiff and the class members would act positively upon TOYOTA'S marketing claims of quality and safety when purchasing these Vehicles.

76.    As a direct and proximate cause of TOYOTA'S negligence, Plaintiff and the class have suffered actual damages in that, inter alia, they have lost the use of these Vehicles while awaiting repair, and, the defect has caused damage to class members' Vehicles' other parts, such as the braking systems on such Vehicles. These failures have caused and will continue to cause Plaintiff and the Class to incur expenses repairing or replacing their axles as well as resultant progressive property damage.

## COUNT V

### Breach of Implied Warranty of Merchantability

77.    Plaintiff incorporates by reference paragraphs 1-34 as if set forth in full herein.

78.    TOYOTA, as the designer, manufacturer, marketer, distributor, and/or seller of the Tacomas, provided implied warranties of merchantability.

79.     TOYOTA breached the implied warranty of merchantability, which by law (including, inter alia, Cal. Comm. Code § 2314) is provided for the exclusive benefit of consumers in connection with agreements for the sale of the Tacomas, because: (a) the Tacomas could not pass without objection in the trade under the contract description in that they are missing a key characteristic of the Tacomas; (b) the Tacomas were not of fair average quality within the product description; (c) the Tacomas were not adequately advertised, packaged, and/or labeled as set forth above having omitted material facts to the contrary; or (d) they did not conform to the promises or affirmations of fact made by TOYOTA. Plaintiff and Class members did not receive goods as impliedly warranted by TOYOTA to be "merchantable," as these Tacomas are missing a key characteristic that affected their core functionality and which prevents these Tacomas from meeting a minimal level of quality. In addition, as this was a defect that existed at time of purchase for the reasons described above, the Tacomas are rendered unmerchantable.

80.     The Tacomas did not conform to these implied warranties when they left the exclusive control of TOYOTA.

81.     TOYOTA either was or should have been aware that the Tacomas would be purchased and used by Plaintiff and class members without additional testing. In addition, Defendants either were or should have been aware that these Tacomas were defective for the reasons set forth above.

82.     Plaintiff and class members did not receive these goods as impliedly warranted.

83.     All conditions precedent to seeking liability for breach of these implied warranties have been performed by or on behalf of Plaintiff and class members in terms of paying for the goods at issue and Defendants having been placed on reasonable notice of these breaches within a reasonable time after such breaches were discovered, and having been given an opportunity to cure these breaches as to Plaintiff and all class members and provide compensation to them prior to asserting this claim in this action.  Defendants have failed to reasonably replace the Tacomas, voluntarily offer to take sufficient remedial measures, or otherwise provide appropriate and complete relief at no cost to Plaintiff and class members.

84.     As a direct and proximate cause of Defendants' breaches of implied warranties, Plaintiff and class members have been injured and harmed, in an amount to be determined at trial.

## COUNT VI

## FRAUD BY CONCEALMENT

85.     Plaintiff incorporates by reference paragraphs 1-34 as if set forth in full herein

86.     TOYOTA concealed and suppressed material facts concerning the quality of its 2018 Toyota Tacoma Vehicles in terms of the safety defects described above.

87.     TOYOTA concealed and suppressed material facts concerning quality and safety of the rear-axle replacement part inventory for the 2018 Toyota Tacoma Vehicles, which due to their impact on the safety of such Vehicles they had an obligation to disclose.

88.     TOYOTA did so to boost confidence in its Vehicles and service and falsely assure purchasers and owners/lessors of their ruggedness and safety.

89.     TOYOTA also had a duty to disclose the defect in the 2018 Toyota Tacoma Vehicles because they were known and/or accessible only to TOYOTA, who had superior knowledge and access to the facts. TOYOTA was in exclusive control of the material facts, was aware such facts were not known to the public or Plaintiff and knew such facts were not known to or reasonably discoverable by Plaintiff and other class members prior to purchase or lease of these Vehicles. These omitted facts were material because they directly impact the value and safety of these Vehicles. Whether a manufacturer's Tacomas are safe and reliable, whether a manufacturer abides by applicable laws and regulations, and whether a manufacturer can and will honor its Tacoma warranties would be material to a consumer.

90.     TOYOTA actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits, avoid government or regulatory intervention, avoid warranty repurchases required under the applicable laws, and avoid anything that would hurt TOYOTA's image and cost it money, and it did do at the expense of Plaintiff and class members.

91.     TOYOTA has not made full and adequate disclosure and continues to mislead the public and conceal material information regarding defects that exist in these Vehicles.

92.  Plaintiff and other class members were unaware of these omitted material facts and were material in that they would not have acted as they did if they had known of these concealed and/or suppressed facts.  Plaintiff's and the other customers' actions were justified.

93.  Because of the concealment and/or suppression of facts, Plaintiff and class members sustained damages in amounts according to proof at time of trial. Had they been aware of the defects that existed in these Vehicles, a reasonable consumer either would have paid less for the Vehicles or would not have purchased them at all. Plaintiff and the class have, in addition, been exposed to the failures of these Vehicle and loss of their use.  Plaintiff and the class members did not receive the benefit of their bargain as a result of TOYOTA's fraudulent concealment. Class members have also been damaged by the loss of use of their Vehicles while making financing payments and DMV registration payments, covering those same periods, as well as procuring alternative transportation costs, paying for unnecessary repairs, and/or repairs to the bent rear axles.

94.  TOYOTA's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and class members' rights. TOYOTA's conduct warrants an assessment of exemplary damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VII

### Common Counts – Assumpsit, Restitution, Unjust Enrichment And/or Quasi-Contract

95.  Plaintiff incorporates by reference all of the paragraphs 1-34 as if set forth in full herein.

96.  This cause of action is alleged as an alternative to the claims for relief set forth in this Complaint based on breach of agreements and warranties, as permitted under Fed. R. Civ. Proc. 8(d)(2).

97.  Plaintiff and the Class members plead just grounds for recovering money paid for benefits Defendants received from them, and have a right to restitution at law through an action

1  derived from the common-law writ of assumpsit, by implying a contract at law based on
2  principles of restitution and unjust enrichment, or through quasi-contract.

3      98.    Defendants, having been unjustly conferred a benefit by Plaintiff and class
4  members through acts of mistake, fraud or request as set forth above, and having received such
5  benefits by encouraging Plaintiff and class members to make such purchases using misleading
6  statements and omitting material facts as set forth in detail above, are required to make
7  restitution. The circumstances here are such that, as between the two, it is unjust for Defendants
8  to retain such a benefit based on the conduct described above. Nothing in this cause of action
9  requires a showing these Vehicles are valueless; rather, the measure of appropriate restitutionary
10  damages is the amount paid by Plaintiff and class members as they did not get the Vehicle that
11  they expected. The return of that benefit is the remedy typically sought for this cause of action,
12  as such money or property belongs in good conscience to Plaintiff and class members, and can
13  be traced to funds or property in Defendants' possession or made as a result thereof. Plaintiff and
14  class members have unjustly enriched Defendants through payments and the resulting profits
15  enjoyed by Defendants as a direct result of payments for the Vehicles in question. Their
16  detriment and Defendants' enrichment were related to and flowed from the conduct challenged
17  in this Complaint.

18      99.    By virtue of the purchase and sale of these Vehicles, Defendants alternatively
19  entered into a series of implied-at-law or quasi-contracts that resulted in a sum certain as stated
20  above being had and received by Defendants, either directly or indirectly, at the expense of
21  Plaintiff and class members under agreements in assumpsit. Plaintiff and class members
22  conferred a benefit upon Defendants by purchasing such Vehicles for sums certain at the prices
23  that they did, including for Plaintiff as set forth above. Defendants had knowledge of the general
24  receipt of such benefits, which Defendants received, accepted, and retained. Defendants owe
25  Plaintiff these specific amounts, and class members similar specific sums that can be obtained
26  either directly from class members, Defendants or the authorized retail sellers of the Vehicles or
27  affiliated financial subsidiaries.

28

100.     Under principles of restitution recognized under the law, an entity that has been unjustly enriched at the expense of another by the retention of a benefit wrongfully obtained is required to make restitution to the other. In addition, under common law principles recognized in claims of common counts, assumpsit, unjust enrichment, restitution, and/or quasi-contract, under the circumstances alleged herein it would be inequitable for Defendants to retain such benefits without paying restitution or restitutionary damages. Such principles require Defendants to return such benefits when the retention of such benefits would unjustly enrich Defendants. They should not be permitted to retain the benefits conferred by Plaintiff and class members via payments for these Vehicles. Other remedies and claims may not permit them to obtain such relief, otherwise leaving them without an adequate remedy at law.

101. Plaintiff and Class members seek appropriate monetary relief for sums certain as is permitted by law for such claims. In addition, one who gains a thing (including money) by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it. Based on the facts and circumstances alleged above, in order to prevent unjust enrichment and to prevent Defendants from taking advantage of their own wrongdoing, Plaintiff and class members are further entitled to the establishment of a constructive trust, in a sum certain, of all monies charged and collected or retained by Defendants for the Vehicles at issue from which Plaintiff and class members may seek restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief as applicable to the causes of action set forth above:

1.     An order certifying the Class and/or California Class, and  appointing Plaintiff and his counsel as class representative and class counsel;

2.     Restitution and the disgorgement of revenues and profits and any monies made by Defendants thereon, to class members;

3. An order requiring all actual, statutory, direct, consequential, incidental and other damages to the extent applicable for each Count (but not at this time as to the CLRA Cause of Action);

4. The distribution of any unclaimed funds pursuant to a *cy pres* fund or fluid recovery remedy;

5. An order enjoining Defendants from further distribution, sales, lease, and service with respect to 2018 Toyota Tacomas manufactured or distributed with bent rear axles unless and until all defective inventory has been replaced, and declaratory relief declaring the rights and obligations of the parties;

6. An injunction requiring Defendants to identify all 2018 Toyota Tacomas distributed with defective rear axles, and all similarly defective replacement parts in inventory;

7. An injunction requiring Defendants to, among other things, inform Class members, franchise Toyota dealerships, the general public, and authorized Toyota repair facilities of the defect;

8. An order awarding attorney's fees and costs to Plaintiff's counsel pursuant to California Civil Code §§1780 and 1794, California Code of Civil Procedure §1021.5, or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Class and/or California Class;

9. An award of pre-judgment and post-judgment interest, as provided by law;

10. Leave to amend the Complaint to conform to the evidence according to proof at time of trial;

11. Such other and further relief as this Court may deem necessary, proper and/or appropriate.

/ / /
/ / /
/ / /
/ / /

1

## JURY DEMAND

2      Plaintiff demands a trial by jury on all causes of action so triable.

3

4    DATED: March /5, 2018                      THE HANSON LAW FIRM
                                                Attorneys for Plaintiff
5

6

7                                               John W. Hanson

8    John W.  Hanson, SBN: 214771
9    Elisa M. Swanson, SBN: 215361
     The Hanson Law Firm
10   7752 Fay Ave., Ste. F
     La Jolla, CA 92037
11   Phone: (858) 451-0291
     Fax: (858) 451-0281
12   Email: john@thesandiegolemonlawyer.com,
            elisa@thesandiegolemonlawyer.com
13

14   Alan M. Mansfield, SBN: 125998
     THE CONSUMER LAW GROUP
15   16870 W. Bernardo Dr., Ste. 400
     San Diego, CA 92127
16   Phone: (619) 308-5034
     Fax: (888) 341-5048
17   Email: alan@clgca.com

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT, *Johnson v. Toyota Motor Sales USA, Inc.*

# Exhibit A

1  John W. Hanson, SBN: 214771
   Elisa M. Swanson, SBN: 215361
2  THE HANSON LAW FIRM
   7752 Fay Ave., Ste. F
3  La Jolla, CA 92037
   Phone: (858) 451-0291
4  Fax: (858) 451-0281
   Email: john@thesandiegolemonlawyer.com,
5  elisa@thesandiegolemonlawyer.com

6
   Attorneys for William J. Johnson
7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
   WILLIAM JOHN JOHNSON, a natural          CASE NO.
11 person, individually, and on behalf of a
   class of similarly situated persons.     AFFIDAVIT OF VENUE BY
12                                           PLAINTIFF, WILLIAM J. JOHNSON
                 Plaintiff,
13
   v.
14
   TOYOTA MOTOR SALES USA, INC., a
15 California Corporation; and TOYOTA
   MOTOR CORPORATION, a corporation
16 organized under the laws of Japan,

17               Defendant(s).

18
   I, William J. Johnson, hereby declare that:
19
        1.     I have personal knowledge of the facts stated herein and could
20
   competently testify thereto if called upon to do so.
21
        2.     I am a Plaintiff in the above-entitled action.
22
        3.     My Complaint filed in this matter contains causes of action for
23
   violations of the Consumer Legal Remedies Act (CLRA) as against Toyota Motors
24
   Sales USA, Inc., and Toyota Motor Corporation.
25
        4.     I purchased the vehicle that is the subject of this action in San
26
   Francisco, California. I received advertisements, warranties, and repairs in San
27
   Francisco and San Mateo counties from Defendants, who do business throughout
28

                                    1
                            AFFIDAVIT OF VENUE

1  the State of California and the Northern District of California.  On information and
2  belief, numerous of members of the proposed class purchased or leased the
3  vehicles that are the subject of this case in this judicial district.
4         I declare under penalty of perjury under the laws of the State of California
5  that the foregoing Declaration is true and correct, and was executed by me in the
6  City of Redwood City, County of San Mateo, State of California, on February ___,
7  2018.
8
9
10
11                      WILLIAM JOHN JOHNSON
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AFFIDAVIT OF VENUE